1

2

3

4

5

6

7

8

9

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10 | GARTH NOLI CRANE,                    ) 1:07-cv-00967-SMS
                                         )
11 |               Plaintiff,            ) DECISION AND ORDER DENYING
                                         ) PLAINTIFF'S SOCIAL SECURITY
12 |                                     ) COMPLAINT (DOC. 1)
         v.                              )
13 |                                     ) ORDER DIRECTING THE ENTRY OF
    MICHAEL J. ASTRUE,                   ) JUDGMENT FOR DEFENDANT MICHAEL J.
14 | Commissioner of Social              ) ASTRUE, COMMISSIONER OF SOCIAL
    Security,                            ) SECURITY, AND AGAINST PLAINTIFF
15 |                                     ) GARTH NOLI CRANE
                   Defendant.            )
16 |                                     )
                                         )
17 |_____)

18        Plaintiff, Garth Noli Crane, is proceeding in forma pauperis

19 and pro se with an action in which he seeks judicial review of a

20 final decision of the Commissioner of Social Security

21 (Commissioner) denying Plaintiff's application for benefits.

22 Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to

23 the jurisdiction of the Magistrate Judge to conduct all further

24 proceedings, including the entry of a final judgment.[1] Pending

25 before the Court are the parties' briefs, which have been

26 submitted without oral argument to the Honorable Sandra M.

27

28        [1] On November 21, 2007, District Judge Anthony W. Ishii ordered the case assigned to the undersigned
   Magistrate Judge for all purposes.

1

Snyder, United States Magistrate Judge.

I. <u>Procedural History</u>

Plaintiff, who was born on April 30, 1962, protectively filed an application for Disability Insurance Benefits (DIB) on June 1, 2004, alleging disability commencing on December 26, 1985, due to pain and weakness in the lower back and left leg, nerve damage, stiffness and cramps from walking even short distances due to an injury on the job, and two resulting back surgeries. (A.R. 17, 62-64, 68-70.)

After his claim was denied initially and on reconsideration, Plaintiff appeared with counsel and testified at a hearing before the Honorable Patricia Leary Flierl, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), held on May 12, 2006. (A.R. 24-26, 17, 22, 161-88.) On September 21, 2006, the ALJ denied Plaintiff's claim. (A.R. 17-22.) After the Appeals Council denied Plaintiff's request for review on April 5, 2007, Plaintiff filed the action here on July 6, 2007. (A.R. 7-9.) Briefing commenced on May 16, 2008, with the filing of Plaintiff's opening brief, and it concluded on August 8, 2008, with the filing of Plaintiff's reply to Defendant's opposition.

Plaintiff had a period of disability from December 1, 1985, to April 1, 2003, based on complications from his back surgery, but he lost the benefits when he went to jail. (A.R. 76, 17.)

II. <u>Standard and Scope of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner

2

is supported by substantial evidence. 42 U.S.C. § 405(g).
Substantial evidence means "more than a mere scintilla,"
Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
(9th Cir. 1975). It is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."
Richardson, 402 U.S. at 401. The Court must consider the record
as a whole, weighing both the evidence that supports and the
evidence that detracts from the Commissioner's conclusion; it may
not simply isolate a portion of evidence that supports the
decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th
Cir. 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).
It is immaterial that the evidence would support a finding
contrary to that reached by the Commissioner; the determination
of the Commissioner as to a factual matter will stand if
supported by substantial evidence because it is the
Commissioner's job, and not the Court's, to resolve conflicts in
the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th
Cir. 1975).

In weighing the evidence and making findings, the
Commissioner must apply the proper legal standards. Burkhart v.
Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
review the whole record and uphold the Commissioner's
determination that the claimant is not disabled if the
Commissioner applied the proper legal standards, and if the
Commissioner's findings are supported by substantial evidence.
See, Sanchez v. Secretary of Health and Human Services, 812 F.2d
509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

3

the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).

III. <u>Disability Analysis and Findings</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the

4

impairment, 20 C.F.R. § 404.1520 (2006);[2] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

Here, the ALJ concluded that Plaintiff had a severe impairment of residual chronic low back pain secondary to a laminectomy with fusion at L5-S1 which did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (A.R. 19.) Plaintiff retained the residual functional capacity (RFC) to lift and carry ten pounds and stand and/or walk occasionally.[3] (A.R. 19.) The ALJ concluded that the limitation of standing and/or walking no more than two hours in an eight-hour day, imposed by consultative internist Dr. Tahir Hassan and

---

[2] All references are to the 2006 version of the Code of Federal Regulations unless otherwise noted.

[3] "Occasionally" means occurring from very little up to one-third of the time. Soc. Sec. Ruling 83-10 at 5.

5

state agency medical consultant Dr. Murray Mitts on October 5, 2004, resulted in Plaintiff's having a sedentary RFC. (A.R. 109, 112, 20-21.) Apparently the ALJ accepted the opinions of those physicians as to Plaintiff's RFC. The doctors had also opined that Plaintiff could only occasionally stoop, crouch, kneel, crawl, climb, and balance. (A.R. 20, 109 [Dr. Hassan opined that Plaintiff had otherwise unspecified "postural limitations" for climbing, balancing, stooping, kneeling, crouching, and crawling due to his back pain], 113.) Plaintiff had no past relevant work, but as a younger individual with a limited education, the ability to communicate in English, and the RFC for a full range of sedentary work, there were sufficient jobs existing for Plaintiff, and a finding that he was not disabled was directed by Medical-Vocational Rule 201.18. (A.R. 20-21.)

IV. <u>Factual Summary</u>

A. <u>Plaintiff's Testimony</u>

Plaintiff, who completed eleventh grade, had a driver's license, drove about two days a week for a mile or two, but had problems with his leg cramping and pain in his lower back, which were his worst physical problems (A.R. 166-67.) About two days out of the week Plaintiff felt good, but at other times he was unable to move around, so Plaintiff sat and relaxed. (A.R. 179-80.) He tried to work around the house despite the doctor's saying not to do so; he helped his wife with the laundry for a short period of about half an hour; he did activities about fifteen minutes at a time before having to stop. (A.R. 180.) On most days he would lie down for most of the day. Most of the time he could sleep at night, but sometimes his back would cramp, and

he would toss and turn. (A.R. 181.)

Plaintiff had two back surgeries in 1984 and 1985, a laminectomy and then a fusion at the site of the L5 disk, which helped for quite a while. However, recently Plaintiff had suffered daily burning, cramping, and pain in his lower back, right hip, and down his right leg. (A.R. 169.) He could lift maybe five pounds, but he was not sure. (A.R. 175.) His bad leg was three inches smaller around than the other. (A.R. 174-75.) Bending and touching the floor were too painful to try; Plaintiff could sit ten or fifteen minutes before having to change position, stand up, or lie down for a few minutes. (A.R. 172-73.) If Plaintiff took medication, it would be about half an hour or so before he could sit for another fifteen minutes. (A.R. 174.) He had problems standing for a long time, such as for half an hour, and it would cause cramping and discomfort, so Plaintiff then would sit down to take the weight off, and after about fifteen minutes could stand back up. (A.R. 175.) He could walk around his yard, which sometimes helped and sometimes made it worse. (Id.) His doctor filled out a paper that said no twisting from side to side, pushing or pulling with the arms, lifting, or bending; he could raise his arms to head level but no further because of cramping. (A.R. 176.)

Plaintiff was in prison between February 18, 2003, and May 15, 2004; he had no job but was in the general population and had been cleared for food handling. (A.R. 184-86.)

Plaintiff had seen Dr. Samarro, who treated him for blood pressure, and in April 2006 Plaintiff had an MRI and had seen a specialist, Dr. King, who had given Plaintiff pain medication,

which Plaintiff said was Vicodin that he took about three times a week; the other pain medication made him nauseous, so he did not take it, and the Vicodin seemed to cause his close-up vision to worsen. (A.R. 168-69, 177, 179, 181.) Plaintiff's doctor did not recommend surgery because he said it would cause more damage. (A.R. 174.) Plaintiff also testified to having been in the hospital for his back several times since he was released from incarceration. (A.R. 185-86.) He did not get pain medication between 1999 and 2004. (A.R. 187.)

B. <u>Medical Evidence</u>

An x-ray of the lumbar spine taken July 25, 1996, reflected a negative study except for slight narrowing at the L5-S1 interspace. (A.R. 150.)

John G. Nork, M.D., performed an orthopedic consultative examination of Plaintiff on July 25, 1996. Plaintiff complained of persistent but not constant pain in his back, aggravated by prolonged standing and sitting, with occasional numbness and cramping of his right leg without real, true radiation of pain. Plaintiff took Flexeril and Tylenol with Codeine. The exam revealed normal station, gait, cervical spine range of motion, upper and lower extremities, hand grip strength, motor strength, and sensation. Dr. Nork found restricted flexion, extension, and bending of the lumbar spine; tenderness in the region of a well-healed surgical scar in the midline over L3 through S1; and spasm in the lumbar paraspinal muscles. Straight leg raising was normal. X-rays of the lumbosacral spine revealed narrowing of the L5-S1 interspace. The impression was status post lumbar laminectomy with residual musculoligamentous sprain/strain. Dr.

8

Nork stated that Plaintiff had minimal residual findings following his injury and surgery, and that he was capable of performing some type of useful function. Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk six hours in an eight-hour workday, and sit continuously during the work day with breaks every two hours without restriction. (A.R. 151-56.)

Records from the California Department of Corrections reflected that in July 2003, Plaintiff was classified as medically eligible for full duty and had been cleared for food handling. (A.R. 104.)

Tahir Hassan, M.D., a diplomate of the American Board of Internal Medicine, performed a comprehensive internal medicine evaluation of Plaintiff for the Department of Social Services in August 2004. (A.R. 107-09.) He reported Plaintiff's complaints of back pain for twenty years that radiated to the left leg, and cramping pain in the left leg after walking, for which Plaintiff took Motrin. Examination of the motor system was normal with no wasting, good tone with power of 5/5 in all extremities, normal hand grip of 5/5 bilaterally, and normal gait. The sensory exam was grossly intact, and reflexes were 2+ bilaterally with normal Babinski. Extension of the cervical spine and extension and flexion of the shoulder, elbow, knee, ankle, and wrist were within normal limits; flexion of the lumbar spine was restricted to 120 degrees, and forward flexion of the hip was restricted to 120 degrees on the left and 110 degrees to the right. Dr. Hassan's diagnosis was chronic back pain secondary to surgery, and mild uncontrolled hypertension. Dr. Hassan opined that based

on the exam, Plaintiff was limited to lifting fifty pounds occasionally and twenty-five pounds frequently, standing and walking with normal breaks for a total of about two hours in an eight-hour workday, and sitting for a total of about six hours in an eight-hour workday, with "postural limitations for climbing, balancing, stooping, kneeling, crouching, and crawling" due to back pain, with no other limitations. (A.R. 107-109, 109.)

Non-examining state agency medical consultant Murray Mitts, M.D., opined on October 5, 2004, and another such consultant confirmed on March 8, 2005, that Plaintiff's low back pain resulted in an ability occasionally to lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand for at least two hours in an eight-hour day, sit about six hours in an eight-hour workday, engage in unlimited pushing and pulling, and occasionally climb, balance, stoop, kneel, crouch, and crawl. (A.R. 111-18, 125-26.)

On December 3, 2004, Dr. Satwant Samrao, M.D., reported that Plaintiff visited him for a blood pressure recheck and for pain medications. (A.R. 122.) Dr. Samrao noted that Plaintiff had last been seen in June 1999, and progress notes confirmed the time interval. (A.R. 122-23.) The doctor assessed chronic low back pain after a laminectomy in 1984 with fusion of L5-S1, and hypertension; the plan was to continue on 100 milligrams of Atenolol daily, Vicodin of five milligrams/500 milligrams every eight hours, and fifteen milligrams of Mobic twice a day. (A.R. 122-24.)

In June 2005, Dr. Samrao examined Plaintiff and found a minimal paraspinal muscle spasm, limited movements, and an old,

10

well-healed surgical scar. The assessment was chronic low back pain status post laminectomy with fusion. An x-ray was ordered. Plaintiff was instructed not to smoke because of bronchial asthma, and no pain medication was given. (A.R. 140.) In July 2005, Mobic samples and a Vicodin prescription were dispensed. (A.R. 139.)

An x-ray taken July 14, 2005, revealed narrowing of the L5-S1 disc without significant reactive change, which the radiologist thought was developmental. There was no reactive change posteriorly of significance in the facets, and no change from the prior exam of January 12, 2005. (A.R. 138.)

In August 2005, Dr. Samrao filled out disability papers, scheduled Plaintiff for an MRI, and stated that it would more than likely be normal, after which Plaintiff would be released to work. (A.R. 137.) Dr. Samrao opined that Plaintiff had a chronic condition that began on December 18, 2004, that rendered him unable to work but did not require the care of someone in the home. (A.R. 127.)

On March 8, 2006, an MRI of the lumbar spine with and without contrast revealed normal curvature, normal promontory angle, and normal height of disc spaces and vertebral bodies. There was posterior disc bulging on the sagittal view at L5-S1 which was impacting the CSF column. There was also a right paracentral disc extrusion impacting the right exiting and central nerve root, with the nerve root displaced and the thecal sac on the right side being flattened. (A.R. 135.) In the axial projection, there was central disc bulging at L4-L5 impacting the CSF column and the dural sac, but the neural foramina were

patent, and the exiting nerve roots were intact. The impression was extruded disc in the right paracentral area impacting the right central and most likely the exiting nerve root; however, it was noted that Plaintiff's symptomatology was on the left side. (A.R. 135.)

On March 23, 2006, Dr. Samrao reviewed the MRI results with Plaintiff. Dr. Samrao noted the prolapsed disc right central, paracentral area with impact in the right central canal and most likely the exiting nerve roots; however, he noted that Plaintiff had symptoms on the <u>left</u> side. The assessment was mild prolapsed intervertebral disc. Plaintiff was counseled, no prescription was written, and Dr. Samrao concluded, "The patient can go to work." (A.R. 134.)

Notes of four examinations of Plaintiff by Henry Ho Kang, M.D., Ph.D., appear in the record and reflect examinations between April 2006 through August 2006. (A.R. 129-30, 157-58.) However, most of the notes are illegible. Dr. Kang prescribed various medications, including Relefen, Backlofen, and Vicodin, for Plaintiff's back condition. He also recommended a home exercise program for one month. (A.R. 157.) There does not appear to be an assessment of Plaintiff's capacities and functional limitations by Dr. Kang in the record.

V. <u>Listed Impairment</u>

The ALJ stated that the impairments listed which were most nearly applicable to Plaintiff's medically determinable impairment, particularly § 1.02 (major dysfunction of a joint due to any cause), had been reviewed and were not met or medically equaled under the facts of the case.

Plaintiff argues that his severe impairment did equate to the listing at § 1.04 because of objective medical evidence, namely, the MRI of Plaintiff's lumbar spine ordered by treating physician Dr. Samrao in March 2006. Dr. Cicely Roberts, M.D., opined that the MRI showed posterior disc bulging on the sagittal view at L5-S1 which was impacting the "CSF" (cerebrospinal fluid) column, which constitutes the central canal of the spinal cord; it also revealed central disc bulging at L4-L5 that was impacting the CSF column and the dural sac; however, the neural foramina were patent, and the exiting nerve roots were intact. (A.R. 135.) Further, at L5-S1 there was a right paracentral disc extrusion impacting the right exiting and central nerve root; the nerve root was displaced, and the thecal sac on the right side was flattened. The impression was an extruded disc in the right paracentral area impacting the right central and mostly likely the exiting nerve root. It was also noted that Plaintiff's symptoms were on the left side. (A.R. 135.)

Plaintiff argues that this evidence meets the listing at 1.04, which states:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by

13

appropriate medically acceptable imaging, manifested
                    by severe burning or painful dysesthesia,
                    resulting in the need for changes in position
                    or posture more than once every two hours;
                    or
                    C. Lumbar spinal stenosis resulting in pseudo-
                    claudication, established by findings on appropriate
                    medically acceptable imaging, manifested by
                    chronic nonradicular pain and weakness, and
                    resulting in inability to ambulate effectively,
                    as defined in 1.00B2b.

It is Plaintiff's burden to establish that his impairment met a listing. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability; there must also be the findings required in the listing. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 416.925(d). Generally, specific medical findings are needed to support the diagnosis and the required level of severity. 20 C.F.R. §§ 404.1525(c)-(d), 416.925(c). The Commissioner is not required to state why a claimant failed to satisfy every different section of the listing of impairments; rather, it is sufficient to evaluate the evidence upon which the ultimate factual conclusions are based. Otherwise, an undue burden would be put on the social security disability process. Gonzales v. Sullivan, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

Defendant argues that Plaintiff has failed to establish that his impairment resulted in a compromised nerve root or spinal cord, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. It is unclear whether compromise of a nerve root or spinal cord is established by the noted "impacting" effect of the bulging disc at L5-S1 on the CSF column, accompanied by right paracentral disc extrusion impacting the

right exiting and central nerve root combined with displacement
of the nerve root and flattening of the thecal sac. (A.R. 135.)

However, even if Plaintiff had established compromise of a
nerve root within the meaning of Listing 1.04, Plaintiff failed
to establish the additional requirements of Listing 1.04 (A),
(B), or (C). Plaintiff did not present findings of (C), lumbar
spinal stenosis resulting in pseudoclaudication established by
findings on medically acceptable imaging; likewise, Plaintiff did
not present evidence of manifestation of stenosis by chronic
nonradicular pain and weakness and resultant inability to
ambulate effectively. Plaintiff did not present findings of (B),
spinal arachnoiditis confirmed by operative note or pathology
report of tissue biopsy. Finally, Plaintiff did not present
evidence supporting a finding of evidence of nerve root
compression in (A), characterized by neuro-anatomic distribution
of pain, limitation of motion of the spine, or motor loss
(atrophy with associated muscle weakness or muscle weakness)
accompanied by sensory or reflex loss. Listing 1.04(A) further
requires that if there is involvement of the lower back, there
must be positive straight leg raising tests (sitting and supine).
Plaintiff failed to provide evidence of the positive test
results.

The Court considers the opinions of Plaintiff's treating
physicians, who concluded that Plaintiff was capable of working.
In addition, the Court acknowledges that the state agency medical
consultants signed opinions in which they concluded that
Plaintiff could work. Such opinions constitute evidence that the
Commissioner properly considered the question of medical

equivalence. See, Soc. Sec. Ruling 96-6p at p. 4 (the signature of a state agency medical or psychological consultant ensures that the consideration has been given by the expert to the question of medical equivalence at the initial and reconsideration levels of administrative review).

In summary, the Court concludes that there is substantial evidence to support a finding that Plaintiff's impairment did not meet or medically equal a listing.

VI. Subjective Complaints

Defendant interprets Plaintiff's brief as raising the issue of whether or not the ALJ made proper credibility findings. (Deft.'s Brief p. 7, Pltf.'s Brief p. 3.) It does not appear to the Court that this issue was raised. Nevertheless, in an abundance of caution, the Court will address the ALJ's handling of Plaintiff's subjective complaints.

The ALJ expressly found that Plaintiff's impairment could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (A.R. 20.) This adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration,, 533 F.3d 1155, 1160 (9th Cir. 2008).

Here, after the ALJ summarized Plaintiff's subjective complaints (A.R. 20), she stated various clear and convincing reasons, supported by substantial evidence, for rejecting the extent of the claimed symptoms (id.).

The ALJ relied on Plaintiff's not working in prison, even though he was cleared for full duty with no restrictions in the

general population. (A.R. 104, 106.) A claimant's extremely poor work history shows that the claimant has little propensity to work and negatively affects his or her credibility regarding any inability to work. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ relied on the inconsistency of Plaintiff's complaints with the opinions of his treating physicians, including the opinion of Dr. Samrao that Plaintiff could work based on symptomatology on the left side, and the doctor's having counseled Plaintiff and filled no prescriptions. (A.R. 20, 134-37.) She also expressly relied on the inconsistency or discrepancy of the objective medical evidence, which showed an extruded disc impacting the right central and most likely the exiting nerve root, and Plaintiff's symptoms, which were on the left side. (A.R. 20.) The ALJ also noted the inconsistency of Plaintiff's claim of having seen Dr. Samrao from 1999 until he was incarcerated in February 2003 with the doctor's records. (A.R. 20.) The ALJ also mentioned the x-ray of July 2005 which reflected narrowing of the L5-S1 disc without significant reactive change. (A.R. 20, 138.) Finally, the ALJ noted that Dr. Kang had seen Plaintiff four times and yet had prescribed only non-invasive treatment (medication) and had not recommended referral to any specialists. (A.R. 20.)

It is permissible to rely upon opinions of physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). A doctor's opinion that a claimant can work is appropriately considered. <u>Moncada v. Chater</u>, 60 F.3d 521,

524 (9th Cir. 1995). Further, In this circuit, valid criteria for evaluating subjective complaints include weak objective support for claims and inconsistent reporting. <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601-02 (9th Cir. 1998). Inconsistent statements are matters generally considered in evaluating credibility and are properly factored in evaluating the credibility of a claimant with respect to subjective complaints. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999). Included in the factors that an ALJ may consider are inconsistencies in the claimant's testimony or between the claimant's testimony and the claimant's conduct. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, <u>Light v. Chater</u>, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others, <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Morgan v. Commissioner</u> 169 F.3d 595, 600 (9th Cir. 1999). An ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint of pain. <u>Johnson v. Shalala</u> 60 F.3d 1428, 1433-34 (9th Cir. 1995).

The Court has reviewed all the reasons stated by the ALJ, and the Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms, and that the ALJ's reasons were properly supported by the record

18

and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

## VI. Expert Opinions

### A. Substantial Evidence

Plaintiff attacks the ALJ's conclusion as to Plaintiff's residual functional capacity and ability to adjust to other work.

The ALJ concluded that Plaintiff's RFC was for a full range of sedentary work; he could lift and carry ten pounds and stand and/or walk occasionally (up to one-third of the time). (A.R. 19, 21.) Sedentary work is defined by the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

The ALJ's conclusion was supported by the opinions of 1) Plaintiff's treating physician, Dr. Samrao, who concluded that Plaintiff could work without any stated limitations; 2) the consulting internist, Dr. Hassan, who found a greater lifting and carrying capacity but articulated a limitation to two hours of standing and walking as well as postural limitations; and 3) the state agency physicians, who also found greater lifting capacity but recognized the two-hour per day standing limit as well as the postural limitations.

The experts' opinions were based on and were consistent with substantial, objective medical evidence of record; they were

well-supported by findings reached pursuant to medically acceptable clinical and laboratory diagnostic techniques. Such opinions of treating and examining physicians, and of non-examining state agency medical consultants, constitute substantial evidence. Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985); accord Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.1995).

### B. Adjusting to Other Work

At step five, Plaintiff objects to the ALJ's summary finding that other jobs existed in the national economy without identifying what those jobs were. He also objects that the ALJ's conclusion that Plaintiff would adjust to other work was not supported by substantial evidence.

The ALJ concluded that Plaintiff could perform the full range of sedentary work. Being able to stand and walk only occasionally does not conflict with an ability to perform essentially the full range of sedentary work. 20 C.F.R. § 404.1567(a).

The ALJ did not expressly reject the postural limitations (only occasional climbing, balancing, stooping, kneeling, crouching, and crawling) assessed by the consulting, examining physician and the state agency physicians. However, even if adopted and fully credited, such postural limitations are not inconsistent with an ability to perform the full range of sedentary work. Postural limitations related to climbing, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of sedentary work. Soc. Sec. Ruling 96-9p at p. 6. Limitations to only occasional

climbing and balancing ordinarily would not have a significant impact on the broad world of work. Soc. Sec. Ruling 85-15 at p. 6. A limitation to occasional stooping (and, logically, to only occasional crouching, a progressively more strenuous form of bending parts of the body) leaves the sedentary occupational base virtually intact. Id.; Soc. Sec. Ruling 96-9p at p. 7. Likewise, crawling and kneeling, which are relatively rare activities even in arduous work, would be of little significance in the broad world of work or within sedentary work. Id.

Where an ALJ's error consists of a failure to discuss evidence favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, even if the postural limitations of the other physicians were fully credited, the Court concludes with confidence that no reasonable ALJ could have reached a different disability determination.

With respect to Plaintiff's challenge to the ALJ's failure to identify specific jobs that he could perform, the Court notes that it is sufficient to determine that a claimant could perform essentially a full range of work (here, the full range of sedentary work) and then apply the "grids," or Medical-Vocational Rules, as a basis or framework for decision. It is the Defendant's burden to show that Plaintiff could perform other work existing in significant numbers in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Defendant may meet this burden either by obtaining the opinion of

the VE or by relying on the medical-vocational guidelines (the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2), which constitute administrative notice of the existence of jobs for persons with specified limitations. Id. at 1099. When the grids are applicable, the Secretary may obtain a directed conclusion of nondisability and may take administrative notice that jobs exist in the national economy that a claimant can perform. Heckler v. Campbell, 461 U.S. 458, 461-462. The guidelines may only be applied when they accurately reflect a claimant's limitations. Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576-77 (9th Cir. 1988). If a nonexertional limitation significantly limits the range of work one can perform, mechanical application of the grids is inappropriate, and a VE is required. Tackett v. Apfel, 180 F.3d 1194, 1102 (9th Cir. 1999). Where nonexertional limitations are found not to significantly limit a claimant's exertional capacity, then use of the grids is appropriate. Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986), as amended, 794 F.2d 1348; Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983).

Here, as previously discussed, the use of Medical-Vocational Rule 201.18 (A.R. 21) by the ALJ was appropriate.

Finally, with respect to Plaintiff's ability to adjust to other work, Plaintiff argues that he had no transferable job skills, and the ALJ made no finding that Plaintiff had such skills. However, the ALJ found that Plaintiff did not have any past relevant work and that thus, transferability of job skills was not an issue. (A.R. 21.) This comports with the pertinent regulatory law, 20 C.F.R. §§ 404.1568(d), 404.1565(a).

Transferable skills cannot be learned from work that is not sufficient to qualify as past relevant work. Regulations provide that "work experience" is relevant when it was performed in the past fifteen years, lasted long enough for a plaintiff to learn to do it, and was substantial gainful activity; if a plaintiff has no work experience or has only worked "off-and-on" or for brief periods of time during the fifteen-year period, the activity will not generally be considered past relevant work. 20 C.F.R. § 404.1565(a).

VII. <u>Disposition</u>

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Garth Noli Crane.

IT IS SO ORDERED.

**Dated:   April 6, 2009**          _____/s/ Sandra M. Snyder_____
                                     UNITED STATES MAGISTRATE JUDGE